## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RALPH OBERDORF, | : | Case No. 4:15-cv-01880 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| PENN VILLAGE FACILITY | : | |
| OPERATIONS, LLC d/b/a | : | |
| MANOR AT PENN VILLAGE | : | |
| and CONSULATE MANAGEMENT | : | |
| COMPANY, LLC, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

## March 3, 2017

Before the Court for disposition is Defendants Penn Village Facility

Operations, LLC d/b/a Manor at Penn Village and Consulate Management

Company, LLC's ("Defendants") Motion to Dismiss the Retaliation Claim in

Plaintiff Ralph Oberdorf's Amended Complaint.  For the following reasons, this

Motion will be denied.

## I.   BACKGROUND

Plaintiff Ralph Oberdorf ("Plaintiff") was employed for approximately two

years as a Licensed Practical Nurse at Penn Village Facility Operations, LLC— a

predominately female-staffed skilled nursing facility located in Selinsgrove,

Pennsylvania.[1]  During the course of this employment with Defendants, Plaintiff was supervised by April McFern, the Assistant Director of Nursing.[2]  While under Ms. McFern's supervision, Plaintiff alleges that he was subjected to disparate treatment and discriminatory harassment based on his gender.[3]  He specifically states that Ms. McFern made derogatory, gender–based comments, including that (1) Mr. Oberdorf must be gay because he is a male nurse, (2) she could not believe that he was a straight male nurse, (3) he had a "nice butt," and (4) his girlfriend must enjoy giving him lap dances.[4]  These comments were made repeatedly over the course of a year, including in January and February of 2015.[5]  Plaintiff further asserts that he was treated in a rude and condescending manner and was disparately disciplined when compared to his female co-workers.[6]

        In response to this disparate treatment continuing throughout his employment, Plaintiff complained multiple times to management, who failed to investigate or resolve the issue.[7]  Instead, Plaintiff alleges that Defendants treated

---

[1]  Am. Compl. (ECF No. 14) ¶¶ 14-15.

[2]  Id. ¶ 16.

[3]  Id. ¶ 17.

[4]  Id. ¶ 18.

[5]  Id. ¶ 19.

[6]  Am. Compl. ¶¶ 20–21.

[7]  Id. ¶ 24.

him even more rudely and "nit-picked" his work.[8]  When Plaintiff complained to Ted Spotts (Administrator) specifically, he was told to "suck it up" and "put on your big boy pants."[9]  Plaintiff was eventually terminated in about mid-February 2015—approximately one week after his last complaint of gender discrimination.[10] As justification for his termination, Plaintiff was provided with a vague explanation concerning an alleged interaction he had with a patient in February of 2015.[11]  Plaintiff avers that this explanation serves as mere pretext for gender discrimination.[12]  In support of this averment, he argues that a female nurse failed to give the patient mediation, but was not terminated for this conduct.[13]

In accordance with Court leave, Plaintiff filed an Amended Complaint on May 6, 2016, re-asserting dismissed hostile work environment and retaliation claims.[14]  Defendants thereafter filed a Motion to Dismiss pursuant to Federal Rule

---

[8]  Id. ¶ 25.

[9]  Id. ¶ 26.

[10]  Id. ¶ 28.

[11]  Am Compl. ¶ 29.

[12]  Id. ¶ 33.

[13]  Id. ¶¶ 31–32.

[14]  ECF No. 14.

of Civil Procedure 12(b)(6) seeking the dismissal of Plaintiff's retaliation claim.[15]

Following the parties' briefing, this matter is now ripe for disposition.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a

motion to dismiss for "failure to state a claim upon which relief can be granted."

Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation

by dispensing with needless discovery and factfinding."[16]  "Rule 12(b)(6)

authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[17]

This is true of any claim, "without regard to whether it is based on an outlandish

legal theory or on a close but ultimately unavailing one."[18]

Beginning in 2007, the Supreme Court of the United States initiated what

some scholars have termed the Roberts Court's "civil procedure revival" by

significantly tightening the standard that district courts must apply to 12(b)(6)

motions.[19]  In two landmark decisions, Bell Atlantic Corporation v. Twombly and

---

[15]  ECF No. 15.

[16]  In re Hydrogen Peroxide Litigation, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

[17]  Neitzke, 490 U.S. at 326 (citing Hishon v. King & Spalding, 467 U. S. 69, 73 (1984)).

[18]  Neitzke, 490 U.S. at 327.

[19]  Howard M. Wasserman, The Roberts Court and the Civil Procedure Revival, 31 Rev. Litig. 313 (2012).

Ashcroft v. Iqbal, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[20] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in Conley v. Gibson and replaced it with a more exacting "plausibility" standard.[21]

Accordingly, after Twombly and Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[22] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[24] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of

---

[20] 550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, supra at 319–20.

[21] Iqbal, 556 U.S. at 670 (citing Conley v. Gibson, 355 U.S. 41 (1957)) ("[a]cknowledging that Twombly retired the Conley no-set-of-facts test").

[22] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

[23] Iqbal, 556 U.S. at 678.

[24] Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[wrongdoing]."[25]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[26]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[27]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[28]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[29]  "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[30]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[31]

---

[25] Twombly, 550 U.S. at 556.

[26] Iqbal, 556 U.S. at 679.

[27] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).

[28] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[29] Iqbal, 556 U.S. at 678 (internal citations omitted).

[30] Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[31] Iqbal, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by <u>Twombly</u> and <u>Iqbal</u>,
> a court reviewing the sufficiency of a complaint must take three
> steps. First, it must tak[e] note of the elements [the] plaintiff
> must plead to state a claim. Second, it should identify
> allegations that, because they are no more than conclusions, are
> not entitled to the assumption of truth. Finally, [w]hen there are
> well-pleaded factual allegations, [the] court should assume their
> veracity and then determine whether they plausibly give rise to
> an entitlement to relief.[32]

## III.   ANALYSIS

Defendants' present motion to dismiss is limited to Plaintiff's re-asserted

retaliation claim brought under Title VII of the Civil Rights Act of 1964.  Having

reviewed Plaintiff's Amended Complaint in light of the deficiencies previously

outlined by my Memorandum of May 3, 2016, I find that Plaintiff has asserted a

plausible claim for retaliation.  My reasoning is as follows.

Section 704(a) of Title VII states:

> It shall be an unlawful employment practice for an employer to
> discriminate against any of his employees ... because he has opposed
> any practice made an unlawful employment practice by this
> subchapter, or because he has made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or hearing
> under this subchapter.[33]

---

[32]  <u>Connelly</u>, 809 F.3d at 787 (internal quotations and citations omitted).

[33]  42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation under this provision, a plaintiff must plead sufficient facts establishing that: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."[34]  In the instant case, I previously dismissed Plaintiff's claim for failure to allege facts creating a reasonable expectation that discovery will establish a causal link between his protected activity and ultimate termination.  With Court leave, Plaintiff has since filed an Amended Complaint which Defendants allege suffers from this same fatal flaw.

A plaintiff may establish the requisite causal connection between a protected activity and an adverse employment action through either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[35]  Alternatively, in the absence of such evidence, the plaintiff can satisfy this element if "from the 'evidence gleaned from the record as a whole,' " a trier of fact can infer causation.[36]  The Third Circuit has cautioned diligence in

---

[34] Connelly, 809 F.3d at 789 (citing Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 201 (3d Cir. 1994)).

[35] Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

[36] Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000)).

making this causal determination because "otherwise a public actor cognizant of the possibility that litigation might be filed against him . . . could be chilled from taking action that he deemed appropriate and, in fact, was appropriate."[37]

In my Memorandum Opinion of May 3, 2016 dismissing the retaliation claim, I found that Plaintiff had failed to allege facts suggesting a causal connection based in part on a lack of dates for both his complaints to supervisors and his termination.[38]  I further found that Plaintiff had failed to identify the allegedly pretextual reason for which he was fired.[39]  Based on my review of the subsequently filed Amended Complaint, I find that Plaintiff has corrected these errors by alleging sufficient facts which, when accepted as true, state a claim to relief that is plausible on its face.

First, I note that the Amended Complaint contains the following added averment which establishes proximity between Plaintiff's complaints to management and his termination:

> 28.    In or about mid-February of 2015, approximately one week after his last complaint of gender discrimination, Plaintiff was terminated from Defendants for completely pretextual reasons not resulting in the termination of other non-male employees.[40]

---

[37] Id.

[38] ECF No. 12, at 9.

[39] Id.

[40] Am. Compl. ¶ 28.

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . ."[41]  A lapse of three or four months is insufficient to establish unusually suggestive temporal proximity.[42]  "'Although there is no bright line rule,' the Third Circuit has not found any period longer than three weeks so 'unduly suggestive' of retaliatory animus that it was sufficient to establish causation without other evidence."[43]  Unlike in the previous pleading, this averment alleges a one week period between the last protected activity (Plaintiff's complaints to management) and his termination.  When taken as true, this allegation places the temporal proximity well within the "three week" guideline delineated by the Third Circuit.[44]

---

[41]  Clark County School Dist. v. Breeden, 532 U.S. 268, 273–74 (2001).

[42]  Id. (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997), Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (7th Cir. 1992)); see also LeBoon v. Lancaster Jewish Cmty. Center Ass'n, 503 F.3d 217, 234 (3d Cir. 2007) (holding that a period of three months between the protected activity and the adverse employment action was insufficient).

[43]  Cary v. National Events Svcs., 2015 WL 667519, *7 (E.D. Pa. Feb. 13, 2015) (citing Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003)).

[44]  Mack v. Yost, 427 F. App'x 70, 73 (3d Cir. 2011) (finding that a plaintiff had satisfied causality by alleging that adverse action was taken a week after the exercise of protected conduct).

Furthermore, even if this alleged temporal proximity were not by itself

"unduly suggestive," I note that Plaintiff has otherwise included a set of factual

allegations demonstrating a plausible causal link based on a "pattern of

antagonism" following his complaints to management.  Specifically, the following

averments, together with this alleged temporal proximity, satisfy the second

possible avenue for showing a "causal link":

> 24.   As a result, throughout the last year of his employment, Plaintiff
> complained multiple times to Defendants' management regarding the
> discriminatory and hostile work environment that he was being
> subjected to because of his gender; however, Defendants'
> management never properly investigated or resolved his concerns of
> discrimination.
>
> 25.   Instead, after Plaintiff began to make such complaints, Defendants
> treated him even more rudely and nit-picked his work.
>
> 26.   Specifically, when Plaintiff complained to Ted Spotts (Administrator)
> about the discriminatory and harassing treatment, Spotts told Plaintiff
> to "suck it up" and "put on your big boy pants."[45]

These allegations constitute additional factual material suggesting a pattern of

antagonism beginning with Plaintiff's first complaint and continuing until his

termination.[46]

---

[45] Am. Compl. ¶¶ 24–26.

[46] <u>Davis v. Fox</u>, Civil Action No. 3:12-CV-1660, 2014 WL 6463778, at *5 (M.D.Pa. Nov. 17, 2014)(Mariani, J.)(finding that a complaint demonstrates "a pattern of antagonism coupled with timing to establish a causal link where acts of retaliation began within two weeks of plaintiff's protected activity and continued thereafter with escalating intensity).

In <u>Connelly v. Lane Const. Corp.</u>, the Third Circuit found that a plaintiff had alleged facts sufficient to "support a reasonable inference of a causal connection" where they indicate that she had complained on multiple occasions to supervisors, and her relationship with said supervisors and male coworkers grew "increasingly strained" thereafter.[47]  In that case, the plaintiff's first complaint to a supervisor concerning harassment in the workplace occurred in May 2010, and was then followed up by numerous complaints to a company-established "Ethics Line" prior to her ultimate adverse employment action in October 2010.[48]  In the instant matter, the additional facts as adduced by Plaintiff allege a very similar story. Specifically, as detailed above, the facts indicate that, over the course of a year, Plaintiff made numerous complaints to management regarding discrimination and hostility which were ultimately met with increasing mal-treatment.  Therefore, in accordance with this Third Circuit directive, I find that Plaintiff has, at this juncture, "raised a reasonable inference that discovery will reveal evidence of the elements necessary to establish her claims."[49]

Third and finally, I find that the record as a whole makes it plausible that further discovery will reveal evidence from which a trier of fact can infer

---

[47] <u>Connelly</u>, 809 F.3d at 792.

[48] <u>Id.</u>

[49] <u>Id.</u>

causation.  In my previous Memorandum Opinion, I noted the paucity of factual

matter indicating both why Plaintiff was terminated, and how that reason was

pretext for invidious discrimination.  The Amended Complaint contained the

following additional factual material concerning the reason for Plaintiff's

termination:

> 29.    Although Plaintiff was not given any specific reason for his
> termination, he was provided a vague explanation about an alleged
> interaction he had with a patient in February of 2015.[50]

In the context of a retaliation claim, a causal link can also be established by

providing facts indicating "inconsistent reasons for the adverse employment

action" taken.[51]  Specifically, "[i]f it is determined that these reasons are merely

pretextual, then they can be considered inconsistent reasons for the adverse

employment action, ultimately leading to a conclusion of causation."[52]  Pretext can

be shown through evidence that "the employer has previously discriminated

against her, that the employer has discriminated against other persons within the

plaintiff's protected class or within another protected class, or that the employer has

treated more favorably similarly situated persons not within the protected class."[53]

---

[50]   Am. Compl. ¶ 29.

[51]   Zelinski v. Pennsylvania State Police, 108 F. App'x 700, 707 (3d Cir. 2004).

[52]   Id.

[53]   Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998)(citing
Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)).

Accepting as true the factual allegations of Plaintiff's Amended Complaint, I find that he has pled sufficient facts making it plausible that the vague explanation for Plaintiff's termination was in fact pretext.  The following averments specifically suggest that further discovery on this claim will reveal that "similarly situated persons" not within the protected class were treated more fairly than Plaintiff:

> 20.  Also, unlike Plaintiff's female co-workers, Plaintiff was treated in a rude and condescending manner, had policies selectively enforced against him, and was disciplined for things that his female co-workers were not disciplined for.
>
> 21.  For example, Plaintiff has knowledge that female nurses who worked under the supervision of Ms. McFern were insubordinate, used profanity in the workplace and in the presence of patients, provided insufficient care to patients and spent work-time on face-book without any repercussion.
> . . .
>
> 30.  Plaintiff has not been disciplined regarding his treatment of any patients in February of 2015 and had otherwise treated patients appropriately.
>
> 31.  Plaintiff is aware that a female nurse failed to give the patient medication in February of 2015 and Plaintiff reported this failure to Defendants' management.
>
> 32.  The female nurse who failed to properly give medication to the patient was not terminated for such conduct.
>
> 33.  Plaintiff believes and therefore avers that Defendants terminated him because of his gender and/or complaints of gender discrimination. [54]

---

[54]  Am. Compl. ¶¶ 20–21, 30–33.

In sum, the Court finds that Plaintiff has plead facts which make tenable his Title VII retaliation claim in accordance with the <u>Twombly-Iqbal</u> pleading standard.  This conclusion, while recognizing that Plaintiff "may be unable to establish causation after the parties engage in discovery,"[55] is based on the additional facts provided by Plaintiff which create a "reasonable expectation that discovery will reveal evidence" of retaliation.  Plaintiff is therefore entitled to the benefit of discovery on this claim.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Title VII retaliation claim under Plaintiff's Amended Complaint will be denied.

An appropriate Order follows.

BY THE COURT:

__s/ Matthew W. Brann_____
Matthew W. Brann
United States District Judge

---

[55]  <u>See</u> <u>Flanagan v. Borough of Laflin</u>, Civil Action No. 13-CV-2863, 2014 WL 1315400, at *9 (M.D.Pa. Mar. 28, 2014)(Caputo, J.)(recognizing the limited scope of the court's finding on causation at the motion to dismiss stage).

15